IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FAYE ROBIN TOULAN | : | |
| | : | |
| v. | : | Civil No. CCB-05-2254 |
| | : | |
| DAP PRODUCTS, INC. | : | |
| | : | |
| | : | |

## MEMORANDUM

Plaintiff, Faye Robin Toulan ("Toulan"), brings this action against her employer DAP Products, Inc. ("DAP"), asserting claims of discrimination, retaliation and hostile work environment under Title VII of the Civil Rights Act of 1964, amended 42 U.S.C. § 2000e, *et seq*. and the Equal Pay Act, 29 U.S.C. § 206(d). Now pending is defendant's Motion for Summary Judgment. The parties have fully briefed the motion and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, DAP's motion will be granted in its entirety.

## BACKGROUND

Toulan asserts she was discriminated against based on her race (Caucasian), national origin (American), and gender (female) while working at DAP, a manufacturer of sealants, caulks and adhesives. DAP has three manufacturing plants, one of which is located in Baltimore. Also located in Baltimore is DAP's world headquarters, a facility that includes DAP's Technology Center ("the Lab"), where Toulan has worked since June 2002.

Shree Nabar, an Indian male and DAP's Vice President of Technology, is responsible for all hiring, promotion, and salary decisions for Lab employees. Nabar initially hired Toulan as a Chemist I – Product Support, promoting her to Chemist II in 2003. Despite receiving multiple

1

raises from Nabar through June 2005, Toulan alleges Nabar favors Asian and/or male employees in setting compensation and imposing discipline.

Toulan's problems at DAP appear to have begun when Nabar reorganized the Lab in May 2004, assigning Toulan to report to Jay Patel, an Indian male and also a Chemist II. Toulan resisted her new assignment from the start, not wanting to work under someone with her same job title. (Toulan Dep. Def.'s Ex. 3 at 165:10 – 166:9; Hairston Dep. Def.'s Ex. 5 at 105:17 – 106.7.) As part of the annual performance review process, DAP chemists and their immediate supervisors complete a "Performance Improvement Process" or "PIP" form. Shortly after the reorganization, Toulan received her third performance evaluation since beginning work at DAP, which, for the first time, included negative comments by Nabar. Following this review, however, Toulan received a second salary increase from Nabar.

Toulan and Patel did not work well together. Consequently, less than a month after the May reorganization, Nabar again moved several associates around, reassigning Toulan to report to a different supervisor. The next month, in July 2004, Nabar issued Toulan an Associate Attendance Warning Notice. DAP policy allows four to five days of sick leave annually. A summary of the vacation, holiday, and sick days taken by Lab associates from January 1 through July 16, 2004 showed Toulan had already exceeded this amount, having taken over nine sick days. (Nabar Aff. Def.'s Ex. 2 ¶ 13 & Attach. A.) The most sick days accumulated by any other employee was four days. Neither of these employees, both Caucasian females, received any warning from Nabar. In the full calendar year of 2004, Jay Patel and Marcia Uranga (Caucasian female) took a total of seven sick days without receiving any warning from Nabar. (*Id*., Attach. B.)

2

A month before Toulan received her attendance warning, Nabar demoted two Caucasian female employees, Felicia Levine and Marcia Uranga. Levine subsequently resigned in February 2006, stating she faced intolerable and discriminatory working conditions under Nabar. (Levine Dep. Pl.'s Ex. H at 57-60, 178-79.) Uranga believes Nabar discriminated against her as well based on the fact that he demoted both her and Levine at the same time. (Uranga Dep. Pl.'s Ex. I at 77.) Toulan first orally complained of discrimination to Nabar and other DAP employees at a July 28, 2004 meeting held to discuss Toulan's attendance warning. She reiterated her feelings at a later August 11, 2004 meeting with Nabar.

Shortly after this second meeting, on August 17, 2004, Nabar temporarily assigned Toulan to work at the Baltimore manufacturing plant. Although Nabar asked Toulan to clean out her desk for the time while she was away, Toulan remained in her previous position when she returned to the Lab on November 22, 2004. In addition, Toulan's hours, pay, and benefits did not change during this re-assignment, and she was reimbursed for the cost of her commute to the Baltimore plant.

Toulan filed her EEOC complaint on December 7, 2004. In May 2005, Toulan received another annual review, in which each of her direct supervisors with whom she had worked during the previous year gave generally positive comments, with a few areas for improvement. (Toulan Dep. Def.'s Ex. 3, Attach. 32.) Inserting his opinion for the second time, Nabar noted that the comments of Toulan's direct supervisors show she "can fulfill the responsibilities of the position she currently has," but he then went on to provide a fairly negative evaluation. (*Id.*) Nevertheless, Nabar again gave Toulan a pay raise following this review.

On June 2, 2005, Toulan met with Nabar, Hairston and Bennett to discuss her 2005 PIP.

3

Notes from this discussion reflect that Toulan was combative, asking numerous questions, but refusing to allow Nabar to respond. (Toulan Dep. Def.'s Ex. 3, Attach. 33.) On three separate occasions, Toulan was advised to lower her voice. As a result, Rita Mayor, DAP's Director of Human Resources, issued a Disciplinary Warning Notice to Toulan on June 9, 2005 for her "rude behavior." (Mayor Aff. Def.'s Ex. 1 ¶ 19.)

Toulan has since been given multiple other written warnings. On April 4, 2006, for example, Toulan was reprimanded for engaging in inappropriate behavior toward her fellow DAP colleagues by photographing her co-workers without their consent and threatening Patel with a lawsuit. (Pl.'s Opp'n, Ex. G.) In addition, DAP, Inc.'s counsel threatened termination in a letter dated May 8, 2006 when Toulan disclosed to her attorneys "highly confidential and proprietary DAP information taken from DAP's Product Vision database" in "direct violation of her Invention and Disclosure Agreement." (*Id.*)

Finally, Toulan complains that on June 9, 2006, having exceeded her vacation and personal leave time for the year, she was forced to take unpaid leave in order to attend the deposition of Felicia Levine.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## II. Discriminatory Treatment

Under Title VII, it is an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff has not, however, presented any direct evidence of employment discrimination by DAP. Thus, her Title VII claims will be analyzed under the burden shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g.*, *Kess v. Mun.*

*Employees Credit Union, Inc.*, 319 F. Supp. 2d 637, 644 (D. Md. 2004).  Under this test, a plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  To do so, a plaintiff must generally show: (1) she is a member of a protected class; (2) she was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) circumstances surrounding the adverse employment action support an inference of discriminatory intent.  *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 581 (D. Md. 2002).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to produce evidence that the employment decision was made for legitimate nondiscriminatory reasons.  *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Once the employer articulates a nondiscriminatory explanation for its decision, the plaintiff must prove by a preponderance of the evidence that the defendant's proffered reasons were merely pretext for discrimination.  *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000).  The *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated, but may not always be adequate to sustain a jury's finding of liability.  *Id* at 148.

Toulan alleges DAP discriminated against her in its compensation, work assignments, discipline, and 2005 performance evaluation.  Aside from DAP's alleged compensation discrimination, however, none of DAP's conduct rises to the level of adverse employment action

for purposes of establishing a *prima facie* case of substantive discrimination.[1]  For substantive discrimination claims, an adverse employment action is one that negatively affects the "terms, conditions or benefits" of employment.  *See Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001).

 First, Toulan takes issue with her assignment to work under Jay Patel in May 2004 and her temporary re-assignment to the Baltimore plant a few months later, in August 2004.  The Fourth Circuit has held that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action."  *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (quoting *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999)).

 Toulan's assignment to Jay Patel did not affect any term, condition or benefit of employment.  *See id*.  Similarly, Toulan's hours, pay, and benefits did not change during her temporary reassignment to the Baltimore plant, and she was reimbursed for the cost of her commute.  In addition, when Toulan returned to the Lab, she remained in her previous position.  Despite Toulan's complaints about her assignment to the plant, including that the plant was dirty and that she did not have a work station, Toulan states in her deposition that working at the plant was a valuable experience and does not claim that someone else should have been sent instead.

---

[1] It is unclear which DAP actions Toulan alleges constitute substantive discrimination, retaliation, or both.  Because the standard for determining whether employer conduct constitutes adverse employment action is broader for retaliation claims than for substantive discrimination claims, DAP's conduct is analyzed under Title VII's retaliation provisions in a later section of this opinion.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006).

*See Booz-Allen*, 368 F.3d at 376 ("[T]he mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action.")  Under the Fourth Circuit standard articulated above, therefore, Toulan's reassignments had no significant detrimental effect on her employment status and thus cannot form the basis of a substantive Title VII claim.  *See id.*; *Boone*, 178 F.3d at 256.

In addition, Toulan claims that the Attendance Warning, issued against her on July 27, 2004, was discriminatory, asserting that only American Caucasian females have been disciplined by Nabar.[2]  She also makes passing reference to negative comments contained in her 2005 PIP as disparate treatment.  A formal letter of reprimand generally will not constitute an adverse employment action unless a plaintiff can show that the letter adversely affected a term, condition, or benefit of employment or was an intermediate step to discharge.  *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006); *Newman v. Giant Food Inc.*, 187 F. Supp. 2d 524, 528-29 (D. Md. 2002) (holding that a verbal warning or counseling letter for arriving late did not constitute an adverse employment action as it did not lead to further disciplinary action).  Similarly, the Fourth Circuit has noted that "a poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms

---

[2] Under the same analysis pertaining to her attendance warning, Toulan's other reprimands concerning her involvement with this case do not rise to the level of adverse employment actions under Title VII's substantive provisions.  Moreover, where a plaintiff alleges discriminatory discipline, the Fourth Circuit requires an employee to show: (1) she is a member of a protected class; (2) her misconduct was of comparable seriousness to the misconduct of other employees not within the protected class; and (3) the discipline imposed upon plaintiff was more severe than that imposed upon other similarly situated employees.  *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).  Toulan has not identified any other employee who has engaged in the type of misconduct for which she was disciplined following the filing of her EEOC complaint.  Thus, she cannot state a *prima facie* case of discrimination with respect to these other written warnings.

8

or conditions of . . . employment.'" *Booz-Allen*, 368 F.3d at 377-78.

Toulan's attendance warning, which threatened "disciplinary action up to and including termination of employment," and her 2005 PIP were placed in her personnel file.  Other than subjective discomfort, however, neither resulted in a tangible consequence to any aspect of Toulan's career.  *See Amirmokri*, 437 F. Supp. 2d at 423; *cf. Lewis v. Forest Pharm.*, 217 F. Supp. 2d 638, 648 (D. Md. 2002) ("[I]f evidence shows that a reprimand not only bruises an employee's ego or reputation, but also works a real, rather than speculative, employment injury, the reprimand becomes a tangible employment action.").  Toulan remains in her current position as a Chemist II, having received salary increases through June 2005.  Thus, neither the attendance warning nor the 2005 PIP have been shown to constitute an adverse employment action under Title VII.  Consequently, summary judgment must be granted on Toulan's discriminatory treatment claims.

### III. Equal Pay

Toulan also asserts wage discrimination by DAP in violation of Title VII and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1).[3]  To establish a *prima facie* case of discrimination under the EPA, a plaintiff must show (1) she "receives lower pay than a male co-employee (2) for performing work substantially equal in skill, effort, and responsibility under similar working conditions."  *See Strag v. Bd. of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995).  If Toulan is able to demonstrate a *prima facie* case of wage discrimination, the burden of production and persuasion

---

[3] In addition to discrimination in salary, Toulan alleges Nabar gave Jay Patel and Lan Huang secret and substantial bonuses, not awarded to Caucasian females working at the Lab.  Yet, plaintiff fails to assert that she was performing substantially the same work as any of her colleagues who received bonuses, aside from Jay Patel, who, as discussed *infra*, is not an appropriate job comparator.  *See Strag v. Bd. of Trustees*, 55 F.3d 943, 948-49 (4th Cir. 1995).

will then shift to DAP to prove, by a preponderance of the evidence, that any pay differential is justified as the result of: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production; or (4) any factor other than gender.  *Id.*; *see also* 29 U.S.C. § 206(d)(1)(i-iv).  Should the defendant establish one of these exceptions, Toulan's claim must fail unless she is able to rebut DAP's evidence.  *See Strag*, 55 F.3d at 948.  A plaintiff bringing a Title VII discrimination in compensation claim must establish essentially the same *prima facie* elements as those for an EPA claim, although the burden of persuasion remains on the plaintiff to demonstrate that the defendant's proffered explanation of any salary differential is pretext for intentional discrimination.  *See Salmons v. Dollar Gen. Corp.*, 989 F. Supp. 730, 737 (D. Md. 1996).

Toulan's selected male job comparator is Jay Patel.  While there is somewhat of a "relaxed standard of similarity between male and female-occupied jobs" in a Title VII action, Title VII and the EPA are generally construed in harmony.  *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994).  Thus, to make out either an EPA or Title VII wage discrimination claim, Toulan must show that she and Patel were performing a "substantially similar job."  *See Kess*, 319 F. Supp. 2d at 644.  As explained by other judges of this court:

> The touchstone of the equal work analysis is whether the tasks performed by the male and female employees are substantially equal. . . . If the jobs to be compared have a 'common core' of tasks, i.e., significant portions of the two jobs are identical, the inquiry turns on whether the differing or additional tasks require greater skill or responsibility.  Skill is a function of experience, training, education, and ability, and is measured in terms of the 'performance requirements' of the job.  Responsibility measures, among other things, the degree of 'accountability' to higher-ups.

*Salmons*, 989 F. Supp. at 736 (quoting *Hassman v. Valley Motors Inc.*, 790 F. Supp. 564, 567-68 (D. Md. 1992)).

Plaintiff cites to little evidence supporting her assertion that she and Patel were similarly situated as Chemist II Associates. *See Malina v. Baltimore Gas & Elec. Co.*, 18 F. Supp. 2d 596, 604 (D. Md. 1998) ("[I]t is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion. The court . . . is not required to independently comb the record to look for them."). Toulan claims only that she and Patel worked on different aspects of the same project (among others), that she worked on more projects than Patel, and that her work resulted in higher gross profits and sales for DAP than did Patel's. (Pl.'s Opp'n at 21-25; Pl.'s Ex. B, Attach. 9, 11; Pl.'s Ex. J, K.) Toulan admits in her deposition, however, that she does not know whether Patel was performing the "same level of complexity of work," merely stating that everyone in the lab does similar work. (Toulan Dep. Pl.'s Ex. 3 at 148:16 – 149:12.) Yet statements made upon "belief" cannot be considered evidence for summary judgment purposes. *See Malina*, 18 F. Supp. 2d at 604 n.4.

Moreover, there are a number of key differences between Patel and Toulan, both in the positions they held at DAP and in their educational and professional backgrounds. For example, Jay Patel had supervisory responsibility over Toulan at DAP in April 2004 and prior to that had supervised Jim Junker during the 2002-2003 fiscal year, whereas Toulan has never held any supervisory responsibility at DAP. Patel and Toulan also worked in different departments at various times from 2002 to the present, with Toulan working primarily in product development, while Patel worked primarily in research. (*See* Mayor Aff. Pl.'s Ex. 18, Attach. C, D.)

In addition, Toulan's prior work experience was mainly in cosmetics development, with only approximately two years in the pharmaceutical industry and no experience with DAP-type

11

products, while Patel had three years experience in reactive chemistry, involving work with sealants and chemistry relevant to DAP's products. (Toulan Dep. Def.'s Ex. 3, Attach. 3; Patel Dep. Pl.'s Ex. C, Attach. 1; Patel Dep. Def.'s Ex. 9 at 5-9, 16-17, 30-35.) Moreover, when Toulan was initially hired by Nabar, she possessed only an Associate Degree in Chemical Technology, while Patel had earned a B.S. in Chemistry and worked at DAP for almost six months. *See Soble v. Univ. of Maryland*, 778 F.2d 164, 167 (4th Cir. 1985) (reasoning that differences in educational backgrounds could make a salary comparison improper based on lack of similarity in skill set with job comparator).

      Finally, Toulan was paid more than males who held her same job title, while Patel was paid less than other females in the Lab. The Fourth Circuit has stated in dicta that, in setting forth a prima facie case under either Title VII or the EPA:

> isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to *the entire relevant group of employees*.

*Strag*, 55 F.3d at 948 (quoting *Houck v. Virginia Polytechnic Inst. & State Univ.*, 10 F.3d 204, 206-07 (4th Cir. 1993)). During Toulan's time as a Chemist I, for example, her salary was lower than Nwaba (African-American male) and Patel (Indian male), but higher than the two Chemist I Caucasian males. Toulan now serves as a Chemist II. During the period from June 1, 2003 through May 2006, there were six other Chemist II Associates. Toulan's salary again was lower than Nwaba and Patel, but higher than the Chemist II Caucasian male. (*Id.* at ¶¶ 8-16.) Moreover, Marcia Uranga and Felicia Levine, both Caucasian females, earned the highest

salaries as Chemist II Associates during this period. (*Id.*)[4]

Given the differences between Patel and Toulan with respect to their educational backgrounds, prior work experience, and level and type of responsibility at DAP, plaintiff has failed to establish she and Patel performed substantially similar work. The conclusion that Toulan has not established a *prima facie* case of wage discrimination under the EPA or Title VII is further confirmed by the entirety of the Lab employees' salaries. Even assuming plaintiff was able to show she and Patel performed substantially similar work, DAP has put forward gender and race-neutral explanations for its salary decisions, including educational background and prior relevant work experience, which Toulan has rebutted only by questioning DAP employees' credibility. *See Ritter v. Mount St. Mary's Coll.*, 814 F.2d 986, 993 (4th Cir. 1987) (finding that a difference in qualifications between a plaintiff and her job comparator can constitute a "factor other than sex" for the purpose of showing that a salary differential is not actionable under the EPA). Thus, judgment for DAP will be granted as to Toulan's claims based on wage discrimination.

### III. Retaliation

Title VII's anti-retaliation provision forbids discrimination against employees who have opposed any practice made unlawful by Title VII or who have "made a charge, testified, assisted, or participated" in a Title VII "investigation, proceeding, or hearing." 42 U.S.C. 2000e-3(a). Thus, to state a *prima facie* case of retaliation, Toulan must show: (1) she engaged in protected

---

[4] Toulan compares herself to both Levine and Uranga, who, according to plaintiff, are also independent females who voice their opinions, refusing to conform to Nabar's gender stereotype of a submissive female. (Pl.'s Opp'n at 19-20, 24; Uranga Dep. Def.'s Ex. I at 65-69.)

activity; (2) DAP took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action. *See Von Gunten*, 243 F.3d at 863. As with a substantive discrimination claim, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for its action. To survive summary judgment, the plaintiff must present evidence from which a juror could conclude by a preponderance of the evidence that the employer's proffered reasons are pretext for intentional retaliation.

Toulan alleges DAP transferred her to the Baltimore Plant in retaliation for complaining of discrimination prior to filing her EEOC complaint. In addition, she asserts DAP unlawfully retaliated against her after she filed her EEOC complaint and pursued legal action by: (1) providing a negative 2005 performance evaluation; (2) issuing Toulan an insubordination warning; (3) reprimanding Toulan in April 2006 for photographing co-workers without their consent; (4) threatening termination in a May 2006 letter after she downloaded confidential DAP information from the Product Vision database; and (5) forcing plaintiff to take unpaid leave in order to attend the deposition of Felicia Levine.

To establish a prima facie case of retaliation, Toulan must prove that the above DAP actions constitute materially adverse employment actions. *See Von Gunten*, 243 F.3d at 863. The standard for demonstrating a materially adverse employment action is less stringent under Title VII's retaliation provisions. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006). Nevertheless, a plaintiff is still required to demonstrate actual harm or injury caused by the retaliatory conduct. *Id*. Unlike Title VII's substantive provisions, however, the anti-retaliation provision "is not limited to discriminatory actions that affect the terms and

conditions of employment." *Id*. at 2412-13. Rather, Toulan need only show that a reasonable employee would have found the action "materially adverse," meaning it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. at 2415. This standard is an objective one. *Id*.

While it is not clear whether all of plaintiff's actions forming the basis of her retaliation claims constitute protected activity, Toulan in any event fails to present sufficient evidence to survive a summary judgment motion on her retaliation claims. Of DAP's alleged retaliatory actions, only the formal reprimands threatening termination and permanently placed in Toulan's personnel file constitute materially adverse employment actions under the *Burlington Northern* standard. *See* 126 S.Ct. at 2414. Even so, DAP has presented legitimate non-discriminatory reasons for each of these warnings, which Toulan does not rebut.

### A. Reassignment to Baltimore Plant

The Supreme Court recently held in *Burlington Northern* that, while a transfer or reassignment of job duties is not automatically actionable, because retaliatory work assignments are a "classic and 'widely recognized' example of 'forbidden retaliation,'" "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id* at 2417.

As previously explained, Toulan acknowledges that her temporary reassignment to the Baltimore plant was a valuable professional experience despite minor discomforts with the working conditions there. Toulan's hours, pay, and benefits did not change, and she remained in her previous position upon returning to the Lab. Consequently, Toulan does not allege any

15

legally cognizable injury or harm flowing from her reassignment. Thus, this temporary reassignment cannot constitute a materially adverse employment action.

### B. Warnings & Performance Evaluation

Prior to *Burlington Northern*, courts generally had held that a reprimand or poor performance review would not rise to the level of an adverse employment action unless it materially affected an employee's status or placed an employee's job in real jeopardy. *See, e.g.*, *Amirmokri*, 437 F. Supp. 2d at 423. As explained above, Toulan's letters of reprimand, insubordination warning, and 2005 PIP had no tangible consequence on the terms or conditions of her employment. Toulan received salary increases through June 2005 and continues to work at DAP.

Even under the relaxed *Burlington Northern* standard, Toulan's 2005 PIP does not constitute a materially adverse employment action. *See* 126 S.Ct. at 2414. Plaintiff asserts that Nabar's negative comments on her 2005 PIP "stunted her growth and development at DAP, Inc. for higher salaries or promotions," but provides no evidence to this effect. (Pl.'s Opp'n at 26.) Furthermore, Nabar's evaluation incorporates both the positive and negative comments of Toulan's direct supervisors, and his subjective perception of her work is more or less consistent with theirs. Thus, Toulan's 2005 PIP would not materially dissuade a reasonable employee from bringing a charge of discrimination.

Moreover, Nabar based his 2005 PIP comments on his evaluation of Toulan's job performance and, other than her own assertions to the contrary, Toulan has presented no evidence rebutting Nabar's non-discriminatory explanation for his review. *See Chyu v. Maryland Dept. of Health & Mental Hygiene*, 198 F. Supp. 2d 678, 683 (D. Md. 2002)

("Plaintiff's own assertions that at all times her job performance was satisfactory do not constitute competent evidence. The self-perception of a plaintiff as to her qualifications . . . is irrelevant; what matters is 'the perception of the decision maker.'").

By contrast, formal discipline letters threatening termination, which are permanently placed in an employee's personnel file, could dissuade a reasonable employee from making a charge of discrimination.  *See Burlington Northern*, 126 S.Ct. at 2415; *cf. Martin v. Merck & Co., Inc.*, 446 F. Supp. 2d 615, 638 (W.D. Va. 2006) (disciplining employee in writing for not wearing safety goggles considered a "mild" form of discipline not materially adverse).  Even assuming these warnings constitute adverse employment actions, however, plaintiff fails to sufficiently rebut DAP's non-discriminatory reasons for its warnings.

DAP issued Toulan an insubordination warning for her inappropriate and combative behavior toward her colleagues when discussing her 2005 PIP.  Similarly, DAP asserts that Toulan's behavior of threatening coworkers with lawsuits and photographing them without their consent disrupted the workplace and violated these employees' sense of safety and security.  In addition, DAP explains that it reprimanded Toulan for downloading and distributing confidential DAP information and for retroactively altering information contained in DAP's database.

Toulan does not deny engaging in the above behavior and offers no evidence of retaliatory intent.  Instead, Toulan asserts that her actions constitute protected activity, seemingly believing that bringing a Title VII suit against DAP gives her carte blanche to act in any manner she chooses, no matter how inappropriate or unethical.  Courts have been clear, however, that "[t]he sword of an EEOC complaint cannot be used as a shield to protect an employee from the consequences of inappropriate behavior that is incontrovertibly below the reasonable

17

expectations of his employer." *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 397 (D. Md. 2004).

### C. Unpaid Leave

Toulan also claims DAP retaliated against her by forcing her to take unpaid leave to attend the deposition of Felicia Levine, alleging DAP is applying its leave policy in a discriminatory fashion, affording some, but not her, the opportunity to make up absences by working overtime. Yet Toulan fails to present sufficient evidence from which a reasonable fact-finder could conclude DAP is applying its leave policy in such a way. She submits only a few e-mails containing her own limited observations and speculation as to the attendance habits of her colleagues. (*See* Mayor Aff. Def.'s Ex. 18, Attach. A; Toulan Aff. Pl.'s Ex. B, Attach. 12.)

Although attending a deposition constitutes protected participation, Toulan had been informed by DAP in early 2006 that, while her absences for her own deposition would not count against her fiscal year leave time, any absences for attending other depositions or court appearances must be taken as vacation. (Mayor Aff. Def.'s Ex. 18 ¶ 6.) Once plaintiff expended her annual leave time, any future absences would count as unpaid personal time off. Rita Mayor explains that the attendance policy became more clearly defined starting in October 2005, but this alone is insufficient to establish a *prima facie* case of retaliation unless Toulan can show some nexus between her lawsuit and the policy clarification evincing retaliatory intent. *See Von Gunten*, 243 F.3d at 863.

Toulan has not demonstrated such a nexus, nor has she provided any evidence rebutting Mayor's explained need for the clarification. In fact, DAP has been exceedingly reasonable in its treatment of Toulan's litigation-related absences. Moreover, as the Fourth Circuit has stated,

an "EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice." *Glover v. S.C. Law Enforcement Div.*, 170 F. 3d 411, 414 (4th Cir. 1999). Thus, Toulan's unpaid leave cannot form the basis of a Title VII retaliation claim.

## IV. Hostile Work Environment

Finally, Toulan claims that the disparate treatment she allegedly suffered as a result of her gender, race and national origin, combined with DAP's retaliatory conduct, created a hostile work environment. To show a hostile work environment in violation of Title VII, plaintiff must establish that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). Thus, to establish a *prima facie* case, Toulan must show: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race or national origin; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imposing liability on DAP. *See Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006).

As explained above, however, Toulan has failed to show any harassment or discrimination based on her gender, race, or national origin, much less evidence coming close to "severe or pervasive" harassment. *See id*. Consequently, Toulan cannot prevail on her hostile work environment claim.

## IV. CONCLUSION

Toulan may be correct when she states that her terms, conditions and/or privileges of

19

employment were "different than [*sic*] any other employee at DAP, Inc. for over two years." (Pl.'s Opp'n at 17.)  Yet she appears to have been targeted, if at all, not because of any protected status, but rather because of personality differences.  *See Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 605 (D. Md. 2002) (noting that "'favoritism, while unfair, is not violative of Title VII in the absence of improper discriminatory intent'").  The majority of DAP's alleged discriminatory conduct does not constitute adverse employment action under any standard.  For those claims that survive this first hurdle, Toulan still is generally unable to show a *prima facie* case of discrimination or retaliation.  Moreover, DAP has asserted non-discriminatory reasons for its alleged adverse actions, which Toulan is unable to rebut sufficiently to raise an inference of intentional discrimination.

Essentially, Toulan asks this court to sit in judgment as a "super-personnel department," which it may not do.  *See Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997); *McCain v. Waste Mgmt., Inc.*, 115 F. Supp. 2d 568, 574 (D. Md. 2000) ("The federal courts do not serve to second guess workplace decisions; thus, the claim cannot be based on mere disagreements with the employment decision.").  Therefore, defendant's summary judgment motion will be granted.

A separate order follows.


|   January 17, 2007   | /s/ |
| Date | Catherine C. Blake |
|  | United States District Judge |